## UNITED STATES v. CITY OF CHESTER et al.

### Civil Action No. 3177.

District Court, E. D. Pennsylvania.
July 6, 1943.

Joseph E. Gold, Asst. U. S. Atty., and Gerald A. Gleeson, U. S. Atty., both of Philadelphia, Pa., for plaintiff.

Theodore Smithers, City Sol., of Chester, Pa., for defendants.

GANEY, District Judge.

The United States Housing Authority is an agency and instrumentality of the United States created by an act of Congress, 42 U.S.C.A. § 1403, whose duties and functions are administered as the Federal Public Housing Authority, under Executive Order 9070, dated February 24, 1942, 50 U.S.C.A.Appendix § 601. This agency through the Chester Housing Authority began the building of one hundred fifty (150) dwellings in the City of Chester, which were all of temporary construction designed for the present war emergency, in order to meet the shortage of housing in that particular area. The construction of the dwellings was carried out under the Lanham Act, 42 U.S.C.A. § 1521, which makes provision for the Federal Works Admin-

istrator to construct buildings or dwellings in order to provide housing for persons and their families engaged in national defense activities in those areas in which the President finds there is an acute shortage of houses which would impede national defense activities, and where such housing would not be provided by private capital when needed.

Pursuant to the authority vested in the Federal Works Administrator under the Lanham Act, supra, a certain area was leased by the United States Government in the City of Chester and the construction of several units of dwellings was under way when the Superintendent of the contractor performing the work was arrested under an information sworn to by the Building Inspector of the City of Chester, charging the said Superintendent of construction with violating the building code of the City of Chester. At a hearing the Superintendent of construction was warned by the magistrate that no further construction should be proceeded with by the contractor unless and until compliance was had by the contractor with all of the provisions of the building code of the City. As a result of this arrest the contractor discontinued all work. The United States Attorney for the Eastern District of Pennsylvania, filed a complaint seeking to enjoin the Mayor and Council of the City of Chester, the building inspector, and the committing magistrate from interfering with or obstructing the construction of the one hundred fifty (150) housing units hereinabove referred to. At the hearing it was freely admitted by the government that no compliance was had with the building code of the City of Chester and the simple question is therefore raised by the bill and answer as to whether the United States Government or an appropriate agency thereof such as the Federal Public Housing Authority in the construction of these dwellings must comply with the building code of the City of Chester.

Under the Lanham Act, supra, wherever the President finds in any area an acute shortage of equipment for public works necessary to the safety, health and welfare of persons engaged in national defense activities, the Federal Works Administrator, with the approval of the President, in order to relieve such shortage has the power (a) to acquire, prior to the approval of the Attorney General, if necessary, im-

574

proved or unimproved lands by purchase or lease (b) "by contract or otherwise (without regard to section 1339 of Title 10, section 5 of Title 41, section 40a of Title 40, or any Federal, State, or municipal laws, ordinances, rules, or regulations relating to plans and specifications or forms of contract, the approval thereof or the submission of estimates therefor) prior * * *", etc.

The question here posed is a simple one, and is whether or not the City of Chester has authority to compel an agency of the United States Government to comply with a local building regulation? There can be no doubt that an instrumentality of the government of the United States was engaged in the performance of a governmental function here—the proper housing of persons engaged in national defense essential to the country's welfare. Governmental agencies performing similar governmental functions have always been deemed to have been exempt from state interference by taxation or regulation. First National Bank of Hartford v. Hartford, 273 U.S. 548, 47 S.Ct. 462, 71 L.Ed. 767, 59 A.L.R. 1; Shaw v. Oil Corp., 276 U.S. 575, 576, 48 S.Ct. 333, 72 L.Ed. 709. This requirement of the City of Chester is a restriction laid directly upon the United States. It is a restriction, the compliance with which, if it is enforcible, would be required before executing a function of government and the supremacy clause of the Constitution, Article 6, prohibits just this. The principle laid down in Shaw v. Oil Corp., supra, that the silence of Congress as to the subjection of its instrumentalities other than the United States to local taxation or regulation, is to be interpreted in the setting of the applicable legislation, and the particular exaction is here buttressed by the fact that in the Lanham Act, it is expressly provided that where land is acquired under the Act by contract or otherwise, no regard is to be had for any federal, state or municipal law, ordinance, rule or regulation. In other words, Congress has expressly declared this instrumentality not to be subject to such regulation, as here sought. The principle here contended for by the government is thoroughly discussed and supported by the recent decision of the Supreme Court #726, October Term, 1942, Mayo et al. v. United States, 63 S.Ct. 1137, 87 L.Ed. ——, dated June 1, 1943.

The prayer of the complainant's bill is granted.